```
1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
2

3    ------------------------------------------------------------
                                    )
4    United States of America,      )   File No. 15-cr-199(1)
                                    )            (DSD/FLN)
5           Plaintiff,              )
                                    )
6    v.                             )
                                    )
7    Phillip Howell,                )   Courtroom 14W
                                    )   Minneapolis, Minnesota
8           Defendant.              )   Monday, April 18, 2016
                                    )   2:01 p.m.
     ------------------------------------------------------------

9

10              BEFORE THE HONORABLE DAVID S. DOTY
           UNITED STATES DISTRICT COURT SENIOR JUDGE
11                     (SENTENCING HEARING)

12   APPEARANCES
       For the Plaintiff:     UNITED STATES ATTORNEY'S OFFICE
13                            BY:  JEFFREY S. PAULSEN, AUSA
                              600 United States Courthouse
14                            300 South Fourth Street
                              Minneapolis, Minnesota 55415
15

16     For the Defendant:     EARL GRAY DEFENSE
                              BY:  EARL P. GRAY, ESQ.
17                            332 Minnesota Street, Ste. W-1610
                              St. Paul, Minnesota 55101
18

19     Court Reporter:        RENEE A. ROGGE, RMR-CRR
                              1005 United States Courthouse
20                            300 South Fourth Street
                              Minneapolis, Minnesota 55415
21

22        Proceedings recorded by mechanical stenography;
     transcript produced by computer.
23

24

25
```

1                    **P R O C E E D I N G S**

2                       **IN OPEN COURT**

3          THE COURT:  Good afternoon.  Do you want to take

4    your seats, except for those who are going to take part, if

5    they would come up to the podium, please.

6          This is the matter of the United States versus

7    Phillip Howell.

8          And may I have appearances, please?

9          MR. PAULSEN:  Good afternoon.  Jeff Paulsen for

10   the United States.

11         THE COURT:  Good afternoon.

12         MR. GRAY:  Good afternoon, Your Honor.  Earl Gray

13   representing --

14         THE COURT:  Do you want Mr. Howell to come on up,

15   please, too?

16         MR. GRAY:  -- Phillip Howell.  He's present and

17   standing next to me.

18         THE COURT:  Mr. Gray, I know that you had a chance

19   to read the presentence report.  I have read your materials.

20   And is there anything more about the report itself?

21         MR. GRAY:  No, Your Honor.

22         THE COURT:  Have you gone over that report with

23   Mr. Howell?

24         MR. GRAY:  Yes, sir.

25         THE COURT:  Anything you would like to say on

1      behalf of Mr. Howell as far as allocution goes?

2                  MR. GRAY:  Yes, Your Honor.

3                  THE COURT:  Yes?

4                  MR. GRAY:  I'm not quite sure of the procedure,

5      but I just -- I did file a position paper with respect to

6      Mr. Howell asking that --

7                  THE COURT:  "Just" meaning when?

8                  MR. GRAY:  Pardon me, Your Honor?

9                  THE COURT:  "Just" meaning -- I have a position

10     paper from you that I read.

11                 MR. GRAY:  Right.

12                 THE COURT:  That's the one?

13                 MR. GRAY:  Yes.

14                 THE COURT:  Okay.  Not filed today?

15                 MR. GRAY:  No, no.  I'm not that tardy.  After Mr.

16     Paulsen filed his position, I filed a response to that.

17                 THE COURT:  Yes, you did.  I noticed that.

18                 MR. GRAY:  And my argument, Your Honor, is that

19     this is a gun case.  It's 37 to 46 months.  He's got one

20     prior felony, and that's a low-level felony in the state

21     court.  He got a year and a day, and he did that.  With

22     respect to the misdemeanors, he has one misdemeanor in Santa

23     Clara, California, and in that misdemeanor he got 4 points

24     because one of the guns, the first gun, in August, caused

25     him to get 4 points instead of 2.  Besides those

1    convictions, Your Honor, he doesn't have much of a record.

2            I don't know when you want me to -- if you want me

3    to address the government's motion now?

4            THE COURT:  Sure.

5            MR. GRAY:  Okay.  Well, the government has filed a

6    motion for 60 months, and it says the Denver case that he

7    had a -- that he had possessed a gun.  He's not been

8    convicted of that.  There was no gun seen on him.  It was a

9    bulge in his pocket, not a gun.  There is probable cause for

10   that.  I don't dispute that.  I'm not disputing the court

11   can take that into consideration.  But with respect to the,

12   you know, some of the innuendo in there about the gun

13   wrapped in the handkerchief and that's what criminals --

14           THE COURT:  I think it was a sock, by the way.

15           MR. GRAY:  All right.  Sock, yes.  -- and that's

16   what criminals do, that's sort of far-fetched.  They also

17   wrap guns in a sock to stop the gun from being rusty and for

18   no accidental discharge.

19           In any event, getting down to the real serious

20   allegation here by the government is that he was involved in

21   this triple homicide, Your Honor, and I filed the newspaper

22   article.  The government makes a statement that we have

23   arrested Mr. Howell on a gun charge and he's going to be

24   indicted on a murder case.  It never happened.  And I would

25   ask the court not to consider evidence, if there is any,

1    from seven years ago that he's never been charged with, not

2    even probable cause for a complaint.  And I realize the

3    newspaper can do what it wants with respect to putting your

4    name in there, as far as a suspect, but it shouldn't be

5    helped by the government and then giving statements about my

6    client going to be indicted and he never was and he never

7    will be.  So I'd ask the court not to consider that aspect

8    of his background.

9            And then, lastly, which is the last argument of

10   Mr. Paulsen that, oh, and by the way, in state court they

11   get 60 months, that's so far from the truth.  They get

12   60 months, but it's 40 months.  You get a third off.  And

13   then from the 40, you are going to get less time than that

14   if you do some of the programs in state court.  So the

15   sentences are about the same.

16           And I'd ask the court to sentence him to the

17   guideline sentence.  There's nothing unusual about this

18   case.  The key factor here is that the probation office

19   found nothing unusual.  The government didn't object to the

20   presentence investigation report.  Then all of a sudden

21   after that they bring a motion for a variance and argue

22   innuendo and suspicion and not real facts.  The idea that he

23   can be sentenced because he's a suspect in a murder case

24   that's nine years old is just unreasonable and unfair, Your

25   Honor.  And I would ask the court to sentence my client

1    within the guidelines, and the median is 40 months.

2          And also -- I'll say it now -- he has a bullet in

3    his leg.  He's been suffering from that at the jail for a

4    long period of time.  And I would ask that he be allowed to

5    turn himself in.  He spent six months on conditional

6    release.  He was gainfully employed.  He worked.  He had a

7    job.  He didn't take drugs.  He behaved himself for six

8    months, Your Honor.  And he did leave for an hour.  A dumb

9    thing to do.  Stupid.  He's not the smartest person in the

10   world with respect to rules, because he's not had that many

11   in his life.  But as far as if you did give him voluntary

12   surrender, he would be able to go to the hospital, get the

13   bullet removed before he goes off to do his sentence, so --

14         And I would ask the court also, as far as the

15   prison term, to be at Rochester so that if there's any

16   follow up on the bullet being extracted, it could be done

17   there.

18         THE COURT:  Well, and I will make a

19   recommendation.  Of course, it can be down there initially

20   too.

21         MR. GRAY:  Yes.

22         THE COURT:  And maybe a better job because, you

23   know, Rochester Medical Center has a lot of doctors right

24   out of Mayo, and so you may end up with a Mayo doctor if you

25   go to Rochester.  So I will make that recommendation.

1          MR. GRAY:  Okay.  Thank you, Your Honor.

2          THE COURT:  Anything else?

3          MR. GRAY:  No.  That's it.  I just -- I've known

4     the guy for a year now, and he seems to have turned his life

5     around with the conditional release.  I was very

6     disappointed in him, as he knows, for not -- for leaving for

7     an hour and coming back.  He -- I don't think he understood

8     the magnitude of it, Your Honor.  Thank you.

9          THE COURT:  Okay.  Mr. Howell, you get a chance to

10    address the court also, if you wish.  Anything you would

11    like to say this afternoon?

12          THE DEFENDANT:  I would like to apologize for my

13    actions.  I am responsible for my actions.  And I've been

14    having time to think, and I have a clear mind.  And, yes, I

15    do feel that I should be getting -- getting what I am

16    getting for my consequences.  That's not good.  I had made

17    not smart decisions and things like that, but that's not who

18    I am, who they say that I am, not who they say I am in the

19    papers, not any of that.  And I just like to just to

20    apologize for disrespecting the law in the courtroom, Your

21    Honor, and just work on being a law-biding citizen.  So I

22    would like to get a second chance to show I can prove that.

23          THE COURT:  Okay.  All right.  Well, that's what

24    we all hope you will do, is become a law-abiding citizen at

25    some point.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  Thank you.

3          Mr. Paulsen, on behalf of the government.

4          MR. PAULSEN:  Well, if we're going to compare this

5     case to state court, 60 months is what you get in state

6     court for one gun.  There's three guns associated with Mr.

7     Howell, and the first one, as you know, was the one in

8     Denver.

9          And when Mr. Gray says it was a bulge, it wasn't a

10    gun, he's not being candid because an officer saw Mr. Howell

11    reach into the waistband and remove that bulge, put it up on

12    a closet shelf and then run out the door.  When they went

13    into that closet shelf, they recovered the gun.  The bulge

14    was the gun.

15          He's not being held accountable for that gun here,

16    and he probably never will be, because he ran away, he

17    jumped bond on that case in 2012, after using a false name,

18    which is why it was hard for us to find him originally.  So

19    he will never be punished for that.

20          I bring that up because if that gun were part of

21    this case, if we had jurisdiction over it, then there would

22    be three or more firearms and there would be a 2-level

23    enhancement and he would be looking at 46 to 57 months under

24    the guidelines.  We don't have that because he ran away from

25    that charge, but I throw that out there just to refute when

1    Mr. Gray says this is just one incident with one gun and a

2    minor criminal record.  I dispute that.

3          His prior felony, by the way, is assault by

4    strangulation, domestic assault by strangulation.  It's a

5    crime of violence, obviously.

6          As far as my references in the pleading to the

7    triple murder, I prosecuted that case.  And I don't throw

8    that out there lightly.  It is not innuendo.  It is not

9    speculation.  It is hard evidence.  Chris Wilton and I

10   prosecuted that case.  And I took the time to review my

11   appellate brief, because it's loaded with the references to

12   Mr. Howell.  And two of the victims of that triple murder

13   are in the courtroom today.  The mother of the male victim

14   is seated out there in the front row, and the little girl

15   who saw her mother and sister get executed is in the

16   courtroom too.  She's grown up now, she's 19, but I think

17   she was about 9 years old then, and she testified at that

18   trial against Lindsey and Raleigh.  And the reason I bring

19   it up is because it was not me, but the reporters who

20   covered that trial who called when they saw Mr. Howell had

21   been charged.  They called and said, Is this the same Howell

22   from the triple murder case?  And we didn't put out press

23   releases.  Mr. Gray says and accuses us of unprofessional

24   conduct.  The reporter called me to confirm whether it's the

25   same one.  And I said yes.  And then all I said was he was

1  and is a suspect, and he is, and it is based on speculation,

2  but hard evidence.  I summarized it in my pleading.  If

3  anybody wanted to go to that trial transcript, they would

4  see it.  We also summarized it at the original detention

5  hearing in this case.  Basically, his phone was bouncing off

6  the cell tower of the crime scene at the time of the

7  murders, and he was having contact with both Lindsey and

8  Raleigh, the two people that were convicted of those

9  murders.

10          And there was other evidence as well.  Raleigh

11  admitted to somebody who testified at trial that it was him

12  and Lindsey and two other guys, one of them was Filthy Phil.

13  That's this defendant.  So it's not rumor and speculation.

14  And I understand he hasn't been charged, but the court can

15  consider reliable, credible evidence, and it is reliable and

16  credible.

17          I oppose voluntary surrender.  He does have a

18  bullet in his leg.  It's because he got shot the day before

19  he committed this offense.  And the evidence from the crime

20  scene indicates it was a gun battle, that he shot back.  And

21  the next day -- he goes to the hospital and was released

22  right away.  And the next day he's out in a car driving

23  around with a .45 caliber gun.  Now, what do you suppose he

24  was going to go do?  He was going to go retaliate against

25  the person who shot him.  And likely the police were on to

1    him.  They pulled him over.  They caught him with the .45

2    caliber gun that he pled guilty to.  So I oppose any release

3    and voluntary surrender, because his behavior indicates that

4    if he had the chance he would probably go try to retaliate.

5         And the thing about him leaving the halfway house

6    for one hour, Mr. Gray says, well, that's the only time we

7    know about, but he got caught that time and he had some

8    excuse about going to some family gathering.  There was no

9    evidence ever presented that there was a family gathering.

10   We will never know what he was up to that night, but I don't

11   think he would have run the risk of going back to jail

12   unless it would have been something illegal and nefarious

13   that he had to go do that night.

14        So I am asking for a modest upward variance.  I

15   think it's supported both by the guidelines.  If that third

16   gun were part of this case, it would be what I am asking

17   for, virtually, but it's supported by his entire history and

18   the way he's behaved on the street and even while at the

19   halfway house awaiting sentencing.  I ask for 60 months.

20        MR. GRAY:  May I respond, Your Honor?

21        THE COURT:  I don't know, Mr. Gray.  If you

22   respond, then I have to allow Mr. Paulsen to respond.

23        MR. GRAY:  All right.

24        THE COURT:  You know, I don't think so.  I think I

25   understand what happened, and I think I understand the

1   arguments made by both of you.  I'm going to take them both

2   into consideration in my sentence, so --

3           But as you counsel both know, I have to make some

4   findings of fact.  In this case the findings of fact haven't

5   been objected to and I will adopt.

6           But defendant objects to the statements in the PSR

7   that he previously served an imprisonment sentence of four

8   months.  Defendant asserts that he only served fifteen days.

9           Now, ruling on this objection is not necessary

10  because the controverted facts will not affect sentencing.

11  That's under Federal Criminal Rule 32(i)(3)(B).  However,

12  there being no other objections, as I already indicated, the

13  court will adopt the statements in the PSR as its findings

14  of fact.

15          As far as -- excuse me -- as far as the

16  application of the guidelines to the facts, a question has

17  arisen regarding the application of the guidelines.

18          Defendant argues that the presentence

19  investigation incorrectly assigns him two criminal history

20  points for committing the offense in Count 1 of the

21  superseding indictment while on probation.  Now, defendant

22  was previously sentenced to a two-year probationary period

23  that ended on April 16th, 2015.  On August 8th, 2014,

24  defendant was found in possession of the firearm in Count 2

25  of the superseding indictment.  Defendant pleaded guilty

1    only to Count 1, but stipulated in his plea agreement that

2    the firearm in Count 2 could be held or should be held

3    against him for purposes of sentencing pursuant to

4    Guidelines Section 1B1.2(c).  And, thus, the presentence

5    investigation report correctly assigns defendant two

6    criminal history points under Guideline Section 4A1.1(d) for

7    committing the offense in Count 2 while on probation.  And

8    the court, therefore, will overrule defendant's objection.

9         Accordingly, the court determines that the

10   applicable guidelines are as follows:  A total offense level

11   of 19, with a Criminal History Category of III, might lead

12   to an imprisonment range of 33 to 46 months, supervised

13   release of 1 to 3 years, a fine range of 6,000 to $60,000

14   and a special assessment of $100.

15        MR. PAULSEN:  Your Honor, did you -- I think you

16   might have had the guidelines range wrong.  Isn't it 37 to

17   46 months?

18        MR. GRAY:  I hate to say it, but I agree with Mr.

19   Paulsen on that.

20        MR. PAULSEN:  I thought you said 33 to 46.

21        THE COURT:  I said 33 all right.

22        MR. GRAY:  It's 37, Your Honor.

23        THE COURT:  I'm going to check with probation, not

24   that I don't believe you guys.

25        Does the probation officer agree?

```
1            PROBATION OFFICER:  That is correct, judge.
2            THE COURT:  33?
3            PROBATION OFFICER:  37 to 46.
4            THE COURT:  37 to 46.  We will correct that.
5       So would the record please show that it is 37 to
6    46 months.
7            I was about to announce what the statutory
8    requirements are.  The statute under which defendant has
9    been convicted sets a maximum term of imprisonment of 10
10   years, a maximum term of supervised release of 3 years and a
11   maximum fine of $250,000.
12           And, by the way, I should thank you for bringing
13   it up.  We didn't want to make a mistake, and I didn't want
14   to just slip over that without thanking both of you.
15           Now, the government has moved for an upward
16   departure or variance, asserting that the guideline range
17   does not adequately reflect defendant's dangerousness or his
18   likelihood to reoffend.  The government notes that defendant
19   has been charged in Denver with being a felon in possession,
20   but that authority will not -- but the authorities there
21   will not extradite him.  The government also notes
22   defendant's alleged involvement in a triple homicide that
23   occurred in St. Paul in 2007.  And, essentially, the
24   government urges the court to punish defendant here for
25   those offenses.  Doing so, however, requires the court to
```

1    rely on facts that have not been proved and raises due

2    process concerns to the court.

3              I am very sorry for the people that are sitting

4    here.  I am very sorry that you are here, and I am very

5    sorry that you had to undergo what you did based on whatever

6    you believe happened.

7              But because the court determines that the

8    circumstances of this case do not warrant an upward

9    departure and, therefore, I am going to deny the

10   government's motion.

11             Mr. Howell, you have been charged in Count 1 of

12   the superseding indictment with being a Felon in Possession

13   of a Firearm, in violation of 18 United States Code Sections

14   922(g)(1) and 924(a)(2).

15             And based upon your plea of guilty to that charge,

16   it is considered and adjudged that you are guilty of that

17   offense.

18             And, therefore, it is adjudged that you are

19   committed to the custody of the United States Bureau of

20   Prisons for imprisonment for a term of 46 months.

21             As I have indicated, I will recommend Rochester be

22   the place of confinement.

23             Further, it is ordered that pursuant to 18 United

24   States Code Section 3583 you are to serve a term of

25   supervised release of 3 years under the following

1    conditions:

2            First, you shall report to the U.S. Probation and

3    Pretrial Services Office in the district in which you are

4    released within 72 hours of release from the custody of your

5    imprisonment.

6            Second, you shall not commit any crimes, federal,

7    state or local.

8            Third, you shall not illegally possess a

9    controlled substance.  You shall refrain from any unlawful

10   use of a controlled substance.  You shall submit to one drug

11   test within 15 days of release from imprisonment and at

12   least two periodic drug tests thereafter as determined by

13   the court.

14           Fourth, you shall not possess a firearm,

15   ammunition, destructive device or any other dangerous

16   weapon.

17           And, fifth, you shall cooperate in the collection

18   of DNA as directed by the probation officer.

19           You shall also abide by the standard conditions of

20   supervised release that have been adopted by the court,

21   including the following special conditions:

22           First, you shall complete an immediate assessment

23   or participate in a program for substance abuse as approved

24   by the probation officer upon release or relapse during your

25   term of supervised release.  That program may include

1    further testing and inpatient or outpatient treatment,

2    counseling or support group.  Further, you shall continue --

3    I'm sorry -- shall contribute to the costs of such treatment

4    as determined by the Probation Office Copayment Program, not

5    to exceed the total cost of treatment.

6            Second, you shall submit your person, residence,

7    office, vehicle or an area under your control to a search

8    conducted by a United States Probation Officer or supervised

9    designee, at a reasonable time and in a reasonable manner,

10   based upon a reasonable suspicion of contraband or evidence

11   of supervision violation.  You shall warn any other

12   residents or third parties that the premises or areas under

13   your control may be subject to searches pursuant to this

14   condition.

15           Third, if not employed in a regular lawful

16   occupation as deemed appropriate by the probation officer,

17   you may be required to perform up to 20 hours of community

18   service per week until employed.  And you may also

19   participate in training, counseling, daily job search or

20   other employment-related activities as directed by the

21   probation officer.

22           No fine will be imposed; however, pursuant to 18

23   United States Code Section 3013, you must pay to the United

24   States a special assessment of $100, which is due

25   immediately.

1          Now, the court finds that the sentence imposed is

2     appropriate and reasonable in light of the considerations

3     set forth in 18 United States Code Section 3553(a).  The

4     court has taken into account the nature and circumstances of

5     the instant offense, as well as the history and

6     characteristics of the defendant, and finds that the

7     sentence imposed is sufficient, but not greater than

8     necessary, to afford adequate deterrence to future criminal

9     conduct.

10          No fine will be imposed because of defendant's

11     inability to pay a fine, due to his pending incarceration.

12          The court does now accept the plea agreement in

13     this case because it is satisfied that the agreement

14     adequately reflects the seriousness of the defendant's

15     offense behavior and that accepting the plea agreement will

16     not undermine the statutory purposes of sentencing.

17          Now, Mr. Howell, you can appeal this case, if you

18     wish.  You talk with your counsel Mr. Gray, find out what

19     you want to do.  If you decide to appeal, you must file a

20     notice of appeal within 14 days of today, otherwise you will

21     give up that right.  Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And if you decide to appeal and you

24     can't afford an appeal or can't afford a lawyer, the

25     government will provide the funds for you to hire a lawyer

1    or pay for or give your lawyer and will also pay the costs

2    and expenses of the appeal.  Do you understand those rights

3    you have?

4              THE DEFENDANT:  Yes.

5              THE COURT:  All right.  I think there is still

6    Count 2 of the superseding indictment outstanding.

7              MR. PAULSEN:  I move to dismiss that count at this

8    time.

9              THE COURT:  And without objection, that motion

10   will be granted.

11             There was a forfeiture issue and I think -- has

12   that been satisfied totally at this point?  I know I signed

13   off on the stipulation concerning the ownership of that gun.

14             MR. PAULSEN:  Yes, I saw that order.  I think it's

15   been resolved, Your Honor.

16             THE COURT:  Is there going to be anything else on

17   the other gun?

18             MR. PAULSEN:  I don't believe so.

19             THE COURT:  Okay.  So that should be all, right?

20             MR. PAULSEN:  Yes.

21             THE COURT:  All right.  Do you want to say

22   anything or anything more about -- I'm not going to grant

23   the motion to allow voluntary surrender.

24             Anything else that should come before the court?

25             MR. GRAY:  May I talk to my client for just a --

1          THE COURT:  You may.

2          (Defendant and his attorney are speaking.)

3          MR. GRAY:  Your Honor, could we have Rochester?

4    Could you designate Rochester?

5          THE COURT:  I did.  I said I would.

6          MR. GRAY:  Oh, did you?  Okay.

7          THE COURT:  I said I would recommend it, you know.

8    And I hope you tell your client just because the judge

9    recommends it, it doesn't mean it is going to happen.

10          MR. GRAY:  No.  I understand.

11          THE COURT:  As a matter of fact, I think maybe it

12    was you that told me one time -- it was either you or one of

13    your cohorts that told me one time that they'd just as soon

14    not have a recommendation, because if you make a

15    recommendation the Bureau of Prisons for sure won't do it,

16    but otherwise by luck you might get it.

17          So, Mr. Howell, just so you know, the chances of

18    you getting into Rochester are not --

19          THE DEFENDANT:  Guaranteed.

20          THE COURT:  Not biddable.  Let's put it that way.

21          THE DEFENDANT:  Okay.

22          THE COURT:  Anything else?

23          MR. PAULSEN:  Not from the government.

24          MR. GRAY:  No, Your Honor.  Thank you.

25          THE COURT:  All right.  Court's going to stand in

1    recess until 2:30.

2              THE CLERK:  All rise.

3              (Court adjourned at 2:26 p.m., 4-18-2016.)

4                          *   *   *

5         I, Renee A. Rogge, certify that the foregoing is a

6    correct transcript from the record of proceedings in the

7    above-entitled matter.

8                   Certified by:  /s/Renee A. Rogge
                                   Renee A. Rogge, RMR-CRR
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25